# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

JOHN F. THORNTON,

        Plaintiffs

        v.

KENNETH J. and DEANNA L.
BARRETT, a married couple residing in
Michigan, LUKINS & ANNIS, P.S., a
Washington Professional Services
Corporation, MICHAEL SCHMIDT, an
individual residing in Idaho, TERRI
BOYD-DAVIS, a married woman
residing in Idaho, BONNER COUNTY
SHERIFF'S DEPARTMENT,  a
governmental agency, DARYL
WHEELER, in his capacity as Bonner
County Sheriff, SALLY MITCHELL, in
her capacity as Bonner County Deputy
Sheriff, and LEANNE BANKSON, in
her capacity as Bonner County Deputy
Sheriff,

        Defendants.

Case No. 2:18-cv-00182-DCN

**MEMORANDUM DECISION AND
ORDER**

## I. INTRODUCTION

Pending before the Court is Defendants Kenneth and Deanna Barretts' Motion to

Dismiss (Dkt. 7), Defendants Terri Boyd-Davis, Lukins & Annis, P.S., and Michael

Schmidt's Motion to Dismiss and Joinder in Barretts' Motion to Dismiss (Dkt. 13), and

Defendants Bonner County Sheriff's Department, Daryl Wheeler, Sally Mitchell and

Leanne Bankson's Motion to Dismiss and Joinder in Barretts and Terri-Boyd Davis,

Lukins & Annis, P.S. and Michael Schmidt's Motions to Dismiss (Dkt. 17). Having

reviewed the record, the Court finds that the facts and legal argument are adequately

presented in the briefs. Accordingly, in the interest of avoiding further delay, and because

the Court finds the decisional process would not be significantly aided by oral argument,

the Court decides the Motions on the record without oral argument. Dist. Idaho Loc. Civ.

R. 7.1(d)(2)(ii). For the reasons set forth below, the Court GRANTS each Motion to

Dismiss.

## II. BACKGROUND

This case arises out of a 2013 state court case, *Thornton v. Mary E. Pandrea and

Kari A. Clark*, CV 2013-1334 ("state court action") and its aftermath. Because the history

of the state court action (and its brief foray into federal court) provides the background

for this case, some detail with respect to the state court action is necessary.

On August 14, 2013, Plaintiff John F. Thornton ("Thornton") sued Mary Pandrea

and Kari Clark, two sisters who owned land bordering Thornton's property, to quiet title

to his land and for damages. The dispute involved a "Well Piece," which was on land

Thornton believed he owned and claimed to have exercised control over.[1] In 1993, prior

to owning the land, Thornton rented the property from Mary Pandrea and Robert Wiltse,

Pandrea's husband at the time. When Thornton first took possession of the property to

rent, he claimed Wiltse and Pandrea described the physical boundaries of the property as

---

[1] Thornton's Amended Complaint generally describes the Well Piece as bordering Tavern Creek and
containing the well providing water to Thornton's Property. Dkt. 2, ¶ 3.2.

including the Well Piece.

In 1998, Thornton purchased the land he had been renting (hereinafter the "Property") via a Warranty Deed, recorded May 7, 1998, in Bonner County. Thornton claims he believed the land he had purchased included the Well Piece, but that in December of 1993, without his knowledge, Wiltse and Pandrea deeded the Well Piece to Clark and Pandrea, as tenants in common, via a Quitclaim Deed. The Quitclaim Deed was recorded on December 27, 1993, in Bonner County, and reserved unto Clark and Pandrea "the right and use of the existing well." Dkt. 2, ¶ 3.6. Despite this recording, Thornton claims he did not learn the Well Piece had been alienated from the Property until 2013, when he had the Property surveyed and discovered the Well Piece was also omitted from the property description contained in his 1998 Warranty Deed.

Thornton subsequently filed the state court action against Pandrea and Clark to quiet title to the Well Piece, as well as to quiet title to an easement located on another area of the Property and designated by the parties as the "Driveway Piece." Pandrea filed a Motion to Dismiss Thornton's Complaint on November 7, 2013. Because both the Motion to Dismiss and Thornton's Opposition to the Motion to Dismiss contained matters outside the pleadings which were not subject to judicial notice, the State Court treated Pandrea's Motion to Dismiss as a Motion for Summary Judgment. *See*, 2:17-cv-00367, Dkt. 1-6, p. 9.[2]

---

[2] Thornton eventually attempted to remove the state court action to this Court in 2017 (hereinafter

In her Motion, Pandrea claimed Thornton was not a bona fide purchaser of the Well Piece because the 1993 Quit Claim Deed gave Thornton constructive notice of Pandrea's interest in it. In addition, Pandrea argued the Well Piece was not included in Thornton's 1998 Warranty Deed for the Property so he could not consider himself to be a bona fide purchased for value. Thornton responded that the physical property description contained in his deed did not, but should have, included the Well Piece, that he had no notice of Pandrea's 1993 conveyance of the Well Piece, and that his 1998 Warranty Deed did not include "any language reflecting the [1993] conveyance, or otherwise referring the right to use the water from the well." *Id*., pp. 4-6. However, both Pandrea and Thornton failed to provide the state court with a copy of Thornton's 1998 Warranty Deed to the Property. Thus, the state court could not decide Pandrea's claim that "since the [Well Piece] is not contained in Thornton's property description, Thornton cannot consider himself to be a bona fide purchaser for value" on summary judgment. *Id*., p. 11. In addition to the parties' omission of Thornton's 1998 Warranty Deed, other issues of material fact, such as Pandrea's representations to Thornton regarding the Well Piece, precluded summary judgment on Thornton's claim that he had purchased the entire

---

"removal action"). That removed federal action was Case No. 2:17-cv-00367-DCN. Ultimately, this Court remanded the case to state court. Much of the state court record was submitted with the removal action, rather than in the instant suit. As will be further discussed, the Court takes judicial notice of the record in both the state court and removal actions and will cite to the removal action for the state court records where such documents have not been submitted in this case. The Court references documents filed in the instant suit by docket number, and documents filed in the removal action by reference to both the case and docket number.

Property in good faith and without constructive notice of Pandrea and Clark's ownership of the Well Piece.

However, in his Complaint, Thornton also appeared to claim ownership of the Well Piece by adverse possession. The State Court determined Thornton failed to present material facts to establish he had occupied the Well Piece for the twenty-year statutory period required for adverse possession under Idaho Code section 5-210. *Id.*, pp. 20-23. Because he could not satisfy each element of adverse possession, the Court held as a matter of law that Thornton had not adversely possessed the Well Piece. *Id.*, p. 23. The State Court granted Pandrea summary judgment on this issue, and Thornton did not appeal the Court's ruling.

Following Thornton's Complaint, Clark counterclaimed against Thornton for interference with her easement rights, for permanent injunction, to quiet title, and for damages. Shortly after the State Court issued its decision on Pandrea's Motion to Dismiss, Clark filed her own "Motion for Summary Judgment of Dismissal of Thornton's Complaint and Motion for Partial Summary Judgment on Clark's Counterclaims." Dkt. 9-1. The primary focus of Clark's claims against Thornton was her right to use the Driveway Piece as an easement, and the allegation that Thornton had interfered with this right when he erected a locked gate to block Clark's access to the Driveway Piece. However, in deciding Clark's Motion for Summary Judgment, the State Court noted:

> When this Court issued its Memorandum Decision and Order Granting in Part and Denying in Part Defendant Pandrea's Motion to Dismiss (Motion for Summary Judgment) on February 14, 2014, the Court had not at that time been provided a copy of Thornton's [1998 Warranty Deed to the Property]. Two weeks after that decision was issued, when Clark filed the instant

motion for summary judgment, was the first time the Court was provided a copy of Thornton's deed…. It is now apparent that at all times Thornton was deeded this parcel, the metes and bounds description . . . did not include the 'Well Piece.'

*Id*., p. 7.

In deciding Clark had an easement appurtenant to the Property, the State Court also explained Thornton's 1998 Warranty Deed contained clear language granting Clark an easement to use the Driveway Piece. *Id*., p. 18. The Warranty Deed thus put Thornton on notice that Clark had an easement, and Thornton did not have a right to erect a locked gate to attempt to keep Clark from using the easement. The State Court accordingly granted Clark's Motion for Summary Judgment.[3] *Id*., p. 22. The State Court entered Judgment in favor of Clark on April 30, 2014. 2:17-cv-00367-DCN, Dkt. 1-8.

Thornton and Pandrea stipulated to dismiss Thornton's claims against Pandrea on May 21, 2014. *Id*., Dkt. 1-9. On June 30, 2014, the State Court entered its Amended Judgment awarding Clark $41,530.17 jointly and severally against Thornton and his attorney/wife, Val Thornton. *Id*., Dkt. 1-10. The award was granted to Clark as the prevailing party and included sanctions against Thornton and his wife based on the State Court's conclusion that Thornton brought the case frivolously because his 1998 Warranty Deed both referenced Clark's easement for the Driveway Piece and did not include the

---

[3] The State Court did not further address Thornton's purported ownership of the Well Piece in its ruling on Clark's Motion for Summary Judgment because, while the state court action was pending, Pandrea and Clark obtained a Decree of Partition in a separate state court lawsuit between the two, Bonner County case number CV 2011-835. Pursuant to the Revised Judgment and Decree of Partition entered on January 24, 2014, in that case, the twenty-acre parcel of land formerly owned by Clark and Pandrea was divided so that Clark no longer had an ownership interest in the Well Piece. In its ruling on Clark's Motion for Summary Judgment, the State Court held any continuing dispute over ownership of the Well Piece was solely between Thornton and Pandrea. *Id*., pp. 21-22.

Well Piece. The State Court held Thornton and his wife had not been candid with the Court and should have produced the deed, instead of waiting for Clark to produce it, to resolve the case much sooner. Dkt. 9-8, p. 8. The $41,530.17 Amended Judgment was recorded with the Bonner County Recorder the same day it was entered, on June 30, 2014. Dkt. 9-3. Thornton filed a Notice of Appeal with the Idaho Supreme Court the same day. Dkt. 9-4. Mrs. Thornton also filed a Motion to Intervene in order to appeal the award of sanctions against her. Dkt. 9-6.

Before the appeal was decided, but after Clark recorded her Amended Judgment of $41,530.17 against Thornton and his wife, Defendants Kenneth and Deanna Barrett purchased Clark's property and Clark assigned her rights in the state court action to them. On August 4, 2014, the State Court substituted the Barretts in Clark's stead and entered an order assigning the Barretts Clark's right to collect the Amended Judgment. Dkt. 9-5. The substitution was also approved by the Idaho Supreme Court. Dkt. 9-8, p. 8.

Pandrea subsequently quitclaimed the Well Piece to Thornton on October 23, 2014. Dkt. 9-7. The Barretts thereafter made several attempts to execute on their Amended Judgment, and, though they obtained partial satisfaction, were still owed $17,779.74 as of February 18, 2016. 2:17-cv-00367, Dkt. 1-21. On February 26, 2016, the Barretts obtained a Writ of Execution permitting a Sheriff's sale of the Well Piece. *Id*., Dkt. 1-22.

While the Barretts' collection efforts were proceeding, the Thorntons' appeal was pending before the Idaho Supreme Court. After the Sheriff's sale of the Well Piece on April 26, 2016, Thornton filed a "Motion to Set Aside the Sale of Exempt Homestead

Property." *Id.*, Dkt. 1-24. In his Motion, Thornton claimed a number of irregularities with

the Sheriff's sale—the same errors Thornton asserts in the instant suit—including that the

Well Piece was sold in violation of his homestead exemption on the Property, that the

Barretts did not object to his claimed homestead exemption, and that he had tendered

payment of the full amount authorized on the Writ of Execution prior to the sale but that

the Barretts and the Bonner County Sheriff refused to accept it. *Id.* The Barretts filed an

objection to Thornton's motion pursuant to Idaho Appellate Rule 13(b) because the

matter was then pending on appeal, depriving the State Court of jurisdiction to rule on the

Motion to Set Aside Sale. *Id.*, Dkt. 1-29. When the State Court set a hearing date for

Thornton's Motion to Set Aside Sale, the Barretts also filed an Opposition to Thornton's

motion. *Id.*, Dkt. 1-33.

In their Opposition, the Barretts challenged each of the purported defects Thornton

claimed warranted setting aside the Sheriff's sale. Specifically, Thornton failed to

submit a claim of homestead exemption after being served with the Writ on April 2,

2016, and instead relied on a Claim of Exemption he had provided to the Sheriff two

years earlier when a previous writ had issued in the state court action.[4] Further, because

Thornton failed to submit a claim of exemption within two weeks of issuance of the Writ,

as required under Idaho Code section 11-203, the Barretts had no notice of Thornton's

---

[4] Notably, the Claim of Exemption Thornton suggested provided the Barretts with notice that the Well Piece was covered under his homestead exemption was filed on September 23, 2014, before Thornton owned the Well Piece and before he could have claimed an exemption for it.

alleged claim of exemption and could not object to it. *Id*. Finally, the Barretts argued

Thornton could not claim a homestead exemption for the Well Piece because Thornton

did not acquire the Well Piece until October 23, 2014, when Pandrea quit claimed her

interest in the Well Piece to Thornton. However, the Amended Judgment was recorded

four months earlier, on June 30, 2014. Under Idaho Code section 55-1005, a homestead

"is subject to execution or forced sale in satisfaction of judgments obtained . . . [b]efore

the homestead was in effect, and which constitute liens upon the premises." Idaho Code §

55-1005. As such, even if the Well Piece could be considered part of Thornton's

homestead, it was nonetheless subject to a forced sale since the Amended Judgment was

obtained and recorded before Thornton owned the Well Piece, and thus, before the

homestead exemption could have come into effect.

The State Court held a hearing on Thornton's Motion to Set Aside Sale on

September 12, 2016. *Id*., Dkt. 39. In its September 13, 2016, Order denying the Motion to

Set Aside Sale, the State Court stated: "Thornton's Motion is denied based on the District

Court's lack of jurisdiction to rule on the Motion pursuant to I.A.R. 13(b)"; and "[a]ny

and all statements of the Court placed on the record at the hearing of the Motion shall

form the basis of, and shall serve as and in place of a written memorandum decision and

order." *Id*.

The day after the State Court denied Thornton's Motion to Set Aside Sale, the

Supreme Court issued its Decision in favor of the Barretts on each of the issues Thornton

had appealed, including finding the State Court properly awarded a total of $41,530.17

for attorney fees under Idaho Code Section 12-121 and Rule 11 sanctions. Dkt. 9-8, pp.

17-22. The Supreme Court also awarded the Barretts an additional $13,386.76 in attorney fees pursuant to Idaho Code section 12-121 for having to defend against Thornton's frivolous appeal. *Id*., p. 27. Following the Supreme Court's decision, jurisdiction returned to the State Court and Thornton could have renewed his motion to set aside the Sheriff's sale, but did not. The State Court thereafter entered multiple orders in the case, including an order entered on November 2, 2016, awarding the Barretts' sanctions for Thornton's frivolous filing of the Motion to Set Aside Sale while the Supreme Court appeal was pending, a Third Amended Judgment on December 20, 2016, for the amount still owed the Barretts, and an Order for Examination of Judgment Debtors John and Val Thornton on August 14, 2017. 2:17-cv-00367-DCN, Dkt. 1-43; 1-47; 1-50. The State Court set the debtor's examination for September 6, 2017. While he did not file any objection with the State Court opposing the debtor's examination, Thornton did not appear for the scheduled examination. Dkt. 9, ¶ 13. Instead, Thornton filed a Notice of Removal to Federal Court on September 6, 2017, attempting to remove the state court action to this Court, and seeking an order from this Court quashing the State Court order for a debtor's examination. Dkt. 2:17-cv-00367-DCN, Dkt. 1; Dkt. 5.

On January 5, 2018, this Court entered a Memorandum Decision and Order finding the removal improper, remanding the case to State Court, denying Thornton's Motion to Quash, and retaining jurisdiction for the sole purpose of determining the amount of fees and costs to award the Barretts. *Id*., Dkt. 13. This Court determined fees and costs were appropriate because the removal was meritless, frivolous, and done with the intent to delay the pending state court post-judgment proceedings. *Id*., pp. 7-8.

On February 22, 2018, this Court awarded the Barretts $4,103.00 in attorney fees they incurred in obtaining a remand of this case to state court. *Id.*, Dkt. 18. Two months later, Thornton filed the instant suit pursuant to 42 U.S.C. § 1983 against the Barretts, the Barretts' attorney, law firm and paralegal ("Attorney Defendants"), and the Bonner County Sheriff's Department, Sherriff, and two Deputy Sheriffs ("State Defendants"), alleging constitutional violations associated with the 2016 Sherriff's sale of the Well Piece.

## III. LEGAL STANDARD

### A. Rule 12(B)(6) Standard

A motion to dismiss for failure to state a claim challenges the legal sufficiency of the claims stated in the complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). To sufficiently state a claim to relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations," however, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but does require more than a sheer possibility that a defendant acted unlawfully. *Id.*

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court identified two "working principles" that underlie *Twombly*. First, although a court must accept as true all factual allegations in a complaint when ruling on a motion to dismiss, the court need not accept legal conclusions as true. *Id*. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. Second, only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Id*. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

In light of *Twombly* and *Iqbal*, the Ninth Circuit has summarized the governing standard as follows: "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv*., 572 F.3d 962, 969 (9th Cir. 2009). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990), or where the allegations on their face show that relief is barred for a legal reason. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). The Ninth Circuit has held that "in dismissals for failure to state a

claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. California Collection Serv., Inc.,* 911 F.2d 242, 247 (9th Cir. 1990).

### B. Rule 12(b)(1) Standard

When subject matter jurisdiction is challenged pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of persuasion. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citations omitted). A party who brings a Rule 12(b)(1) challenge may do so by referring to the face of the pleadings or by presenting extrinsic evidence. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual."). In the former, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. In resolving a factual attack on jurisdiction, the court need not presume the truthfulness of the plaintiff's allegations and may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Id*.

### IV. ANALYSIS

### A. Judicial Notice

As a threshold matter, Thornton suggests the Court should ignore any rulings or filings in both the state court action and the removal action as matters outside the

pleadings. However, Thornton acknowledges that such court filings are documents subject to judicial notice. Under Federal Rule of Evidence 201(b), a court may take judicial notice of a fact not subject to reasonable dispute because it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. FRE 201(b). The Court "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006).

The Ninth Circuit has consistently held that courts may take judicial notice of documents filed in other court proceedings to establish the fact of such litigation and the face of averments made. *U.S. v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (a federal court may take notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue") (internal quotation and citation omitted); *Bryant v. Carleson*, 444 F.2d 353, 357 (9th Cir. 1971) (taking judicial notice of proceedings and filings in other courts, including a decision of the California Supreme Court issued while the parties' appeal in the federal case was pending). Here, judicial notice of the record in both the state court action and the removal action is proper. The court documents are matters of public record from sources whose accuracy cannot reasonably be questioned. Additionally, those cases directly relate to the matters at issue here.

The Court takes notice of the filings in the state court and removal actions for the limited purpose of recognizing the fact that certain court proceedings took place, the

subject matter of the litigation, and the allegations and judicial acts recorded in them. The Court will consider such noticed documents for purposes of the pending Motions to Dismiss under 12(b)(6). *U.S. v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003) (A court may consider matters of judicial notice without converting the motion to dismiss into one for summary judgment).

### B. Motions to Dismiss by Barretts and Attorney Defendants

Given the similarity of the issues presented, the Court will jointly address the two motions to dismiss filed by the Barretts and the Attorney Defendants (collectively referred to hereinafter as "Non-Governmental Defendants").

### 1. Failure to State a Claim

Thornton brings his claim pursuant to 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must allege "that an individual acting under the color of state law deprived him of a right, privilege or immunity protected by the United States Constitution or federal law." *Levine v. City of Alameda*, 525 F.3d 903, 905 (9th Cir. 2008) (citation omitted).

Although Thornton's Amended Complaint alleges generally that the Non-Governmental Defendants "acted under color of law, with malice and deliberate indifference to [his] constitutional rights," Thornton fails to identify which constitutional right or rights he believes he was deprived of. Dkt. 2, ¶ 4.2. However, the Court need not address Thornton's claim that the Non-Governmental defendants deprived him of a constitutional right because the Amended Complaint fails to satisfy the state action requirement of § 1983.

In *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 926 (1982), the Supreme Court considered a debtor's claim that in unlawfully attaching his property, his creditors acted "under color of" state law to unconstitutionally deprive him of his property. The Court determined defendant creditors' liability hinged on whether their "conduct allegedly causing the deprivation of a federal right [was] fairly attributable to the State." *Id*. at 937.

The "fair attribution" test has two components: a state policy and a state actor. *Id*. The state policy component requires that "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *Id*. "A state policy may be inferred from either a state statute or a well-settled custom or practice." *Roudybush v. Zabel*, 813 F.2d 173, 176 (8th Cir. 1987) (citing *Lugar*, 457 U.S. at 940-41 and *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 168 (1970)). The state actor component requires that "the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar*, 457 U.S. at 937.

Thornton suggests *Lugar's* "state action" test is satisfied because the Non-Governmental Defendants acted together with the State Defendants to sell the Well Piece. Dkt. 20, pp. 6-8. However, Thornton alleges only that the Non-Governmental Defendants violated Idaho's attachment statutes. He does not allege the Non-Governmental Defendants acted pursuant to an unconstitutional statute, or that the process by which he

was deprived of the Well Piece conformed to a permanent and well-established practice of the State.

As the Eighth Circuit held in *Roudybush*:

State policy is not implicated when an injured party claims that a private party has violated a constitutional post-judgment procedural statute in the course of depriving the injured party of his property. To the contrary, the state, by enacting the statute, has expressly condemned a deprivation of such means. In addressing the facts before it, the *Lugar* Court made clear that a private party's unlawful use of a constitutional state procedural statute does not, by itself, satisfy the state policy component of *Lugar's* fair attribution test. The petitioner in *Lugar* presented two relevant counts. Count one challenged the private party respondents' use of Virginia's allegedly unconstitutional pre-judgment attachment statute; this allegation satisfied the state component. Count two alleged that the respondents used the State's presumably constitutional procedural scheme in an unlawful matter; this allegation did not satisfy the policy component.

813 F.2d at 177 (*citing Lugar*, 457 U.S. at 940-41).

Thornton claims in his Response that *Lugar* supports his § 1983 claim because the Supreme Court in *Lugar* "held that a creditor who used a state prejudgment statute *had* acted under color of law because, in attaching the debtor's property, with the help from court clerk and sheriff, the creditor had used state power. The assistance from state officials made the creditor a joint participant in state action." Dkt 20, p. 6 (emphasis in original). Thornton confuses the "state actor" component of the fair attribution test with the "state policy" component. Although the Non-Governmental Defendants may be said to be "state actors" because they acted together with the State Defendants to attach and sell the Well Piece, Thornton does not allege they did so pursuant to an unconstitutional state policy.

Thornton also claims "the Barretts are creditors who made use of the assistance from the Bonner County Sheriff's Department to take the plaintiffs property on the ex parte application of the Barretts[.]" *Id.*, p. 7. However, property cannot be attached and sold ex parte under Idaho's attachment statutes. *See generally*, Idaho Code §§ 8-502, 8-503, 8-504, 8-506B, 8-506C. Nor was the sale of the Well Piece accomplished through an ex parte application by the Barretts. The Amended Complaint itself states Thornton was served with the Writ of Execution on April 2, 2016. Dkt. 2, ¶ 3.21. Pursuant to Idaho Code section 8-502, Thornton could have contested the Writ and requested a hearing prior to the sale of the Well Piece but failed to do so.

Thornton does not challenge Idaho's laws or procedure for attaching property, but instead alleges that both the Non-Governmental and State Defendants failed to comply with various provisions of Idaho's attachment statutes, such as by improperly serving him under Idaho Code section 8-507, failing to provide him with notices of exemptions and instructions pursuant to Idaho Code section 8-506, and failing to accept his tender of payment of the amount due under the writ in violation of Idaho Code section 8-506C. Dkt. 2, ¶¶ 3.20, 3.23, 3.26, 3.35. Thornton's claim is thus for "misuse or abuse" of Idaho's statutes and does satisfy the state policy component of *Lugar's* fair attribution test. *Lugar*, 457 U.S. at 942. As such, Thornton challenges only private action and does not state a cause of action against the Non-Governmental Defendants under § 1983.[5]

---

[5] In light of this holding, and because the sole basis for Thornton's suit is § 1983, the Court declines to address the parties' arguments regarding issue and claim preclusion.

### C. Motion to Dismiss by State Defendants

The State Defendants seek dismissal of Thornton's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). The Court addresses the jurisdictional issue first.

### 1. Subject Matter Jurisdiction

The State Defendants suggest this Court lacks subject matter jurisdiction over Thornton's § 1983 claim because the service defects alleged by Thornton could be remedied by a state court. The State Defendants cite *Chicarelli v. Plymouth Garden Apartments*, 551 F.Supp. 532, 537 (E.D. Pa. 1982) to support this position, noting the *Chicarelli* Court stated:

> If there should be a deviation from the state statute—such as a failure to give notice required by the state law—the defect could be remedied by a state court and there would be no occasion for § 1983 relief… Under this approach, the federal courts do not have jurisdiction to review every [foreclosure] proceeding in which the debtor claims there has been a procedural defect constituting a denial of due process of law. Rather, the federal court's jurisdiction under § 1983 is limited to challenges to the constitutionality of the state procedure itself.

551 F.Supp. 532, 537 (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 176-78 (1978) (brackets in original).

In support of this contention, *Chicarelli* quotes *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 176-78 (1978), noting three justices of the Supreme Court suggest even procedural defects serious enough to deprive a debtor plaintiff of a federal right in the attachment or sale of the debtor's property would not state a claim under § 1983. *Chicarelli*, 551 F.Supp. at 537. However, the majority in *Flagg* did not so hold. Instead,

the quoted language appeared in Justice Stevens' dissent. The Supreme Court in *Flagg*

considered whether a warehouseman's proposed sale of goods entrusted to him for

storage, as permitted under New York Uniform Commercial Code section 7-210,

constituted an action properly attributable to the State of New York. *Flagg*, 436 U.S. 151.

However, no public officials were named as defendants in the case. *Id*. at 157.

*Flagg* thus involved the question of whether a creditor's self-help use of a state

statute, without any assistance from state officials, satisfied the "state action" component

of § 1983. As such, the *Flagg* plaintiffs were required to establish not only that the

defendant acted under color of the challenged statute, but also that the defendant's actions

were properly attributable to the State of New York. *Id*. By contrast, where, as here, the

defendant is a public official, the latter two elements of a § 1983 claim merge. *Id*. at 157,

n. 5. The *Flagg* Court held a private individual's self-help use of New York's statute did

not constitute "state action" under § 1983.

In his dissent, Justice Stevens rejected the *Flagg* Court's finding that solely private

use of the statute did not constitute state action, noting the "focus is not on the private

deprivation but on the state authorization." *Id*. at 176. Justice Stevens suggested the state

action component of § 1983 was satisfied because the state had enacted an

unconstitutional statute, noting, "[m]y analysis in this case thus assumes that petitioner

Flagg Brothers' proposed sale will conform to the procedure specified by the state

legislature and that respondents' challenge therefore will be to the constitutionality of that

process." *Id*. Justice Stevens' statement regarding jurisdiction was thus premised on his

belief that private use of the New York statute constituted "state action" which could

allow private individuals to challenge the constitutionality of a statute under § 1983

without any enforcement of the statute by state officials. The statement in Justice

Stevens' dissent regarding jurisdiction is neither relevant to, nor preclusive of, the

Court's subject matter jurisdiction in this case, where overt action by state actors is

alleged.

The State Defendants also cite *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) in

support of their claim that this Court lacks jurisdiction. Generally, procedural due process

requires notice and an opportunity to be heard *prior* to the deprivation of a

constitutionally protected interest. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S.

306, 313 (1950). In *Hudson*, however, the Supreme Court held that in certain procedural

due process cases, a postdeprivation remedy is adequate. *Hudson*, 468 U.S. at 533.

Specifically, there is no procedural due process violation where a deprivation is

unforeseeable, random, and unauthorized, and where the state provides an adequate

postdeprivation remedy. *Id*. The "*Parratt-Hudson* doctrine"[6] represents a special type of

procedural due process case in which "post-deprivation tort remedies are all the process

that is due simply because they are the only remedies that the state could be expected to

---

[6] In *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled in part*, *Daniels v. Williams*, 474 U.S. 327
(1986), the Supreme Court held the Due Process Clause of the Fourteenth Amendment is not violated
when a state employee negligently deprives an individual of property, provided an adequate
postdeprivation remedy is available. The *Hudson* Court extended this holding to intentional deprivations
of property, finding "an unauthorized intentional deprivation by a state employee does not constitute a
violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a
meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations
of property by state employees, the state's action is not complete until and unless it provides or refuses to
provide a suitable postdeprivation remedy." *Hudson*, 468 U.S. 517, 533 (1984).

provide." *Zinerman v. Burch*, 494 U.S. 113, 128 (1990). Although, as will be further discussed, the *Parratt-Hudson* doctrine is relevant to this case, it is not an exhaustion doctrine and does not involve the Court's subject matter jurisdiction. Instead, when *Parratt-Hudson* is applicable, it results in rejection of a procedural due process claim on the merits, not a claim for failure to exhaust state remedies. MARTIN A. SCHWARTZ & KATHRYN R. URBONYA, SECTION 1983 LITIGATION § XVI (2d ed. 2008).

Having determined it has subject matter jurisdiction to review Thornton's § 1983 claims, the Court turns to whether Thornton states a claim against the State Defendants.

## 2. Failure to State a Claim

The State Defendants suggest Thornton fails to state a claim against them because he has not alleged a constitutional violation and because Thornton fails to plead municipal liability pursuant to *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690-91 (1978). The Court first considers whether Thornton has alleged the State Defendants' actions caused a constitutional violation. *See, e.g., Collins v. City of Harker Heights, Tex*., 503 U.S. 115, 120 (1992) ("[P]roper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation.").

Although his Amended Complaint does not so specify, Thornton vaguely invokes a violation of his Due Process and Fourth Amendment rights in his Response to the State

Defendant's Motion to Dismiss.[7]

### a.    Due Process

The Fourteenth Amendment prohibits a state from depriving "any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV. A § 1983 claim based on the denial of procedural due process challenges the constitutional adequacy of the protections accompanying an alleged deprivation of a constitutionally protected interest in life, liberty, or property. The deprivation alone is a necessary, but insufficient, condition to a cognizable claim. To be actionable under § 1983, the deprivation must have been without adequate process. *Carey v. Piphus*, 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property."); *see also Zinermon*, 494 U.S. at 125 ("In procedural claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." (emphasis in original) (citations omitted)).

Assuming Thornton had a property interest in the Well Piece, the Court must consider whether the procedures attendant with the sale of the Well Piece afforded

---

[7] Thornton does not allege a Fifth Amendment violation but references an "intentional and knowing wrongful taking of his real property" in his Response to the State Defendants' Motion to Dismiss. Dkt. 21, p. 3. Although this language invokes the Fifth Amendment, Thornton has not cited the Fifth Amendment, and does not plead or argue any of the elements required for a Fifth Amendment takings claim. Thornton instead contends the State Defendants "clearly violated the Fourth Amendment" and "unconstitutionally deprived" him of his real property. *Id.*, pp. 2-5. The Court thus construes Thornton's language regarding the "wrongful taking" of his property as a claim for unlawful seizure under the Fourth Amendment.

procedural due process. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 459 (1989). The issue of which procedural safeguards must accompany a state's deprivation of a constitutionally protected interest is a matter of federal law. *Vitek v. Jones*, 445 U.S. 113, 126 (1990). Generally, the Constitution requires some notice and an opportunity to be heard before the deprivation of a protected interest takes place. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

Thornton litigated the underlying state court action through summary judgment. He then filed an appeal, which was pending during the Writ's execution. After the Idaho Supreme Court affirmed the State Court's judgment, the parties engaged in additional post-judgment proceedings before the State Court. By reason of his participation in the State Court proceedings, both before and after the Writ's execution, Thornton had sufficient notice and opportunity to be heard.

Further, Thornton admits he received notice of the Sheriff's sale when he was served with the Writ of Execution on April 2, 2016. Dkt. 2, ¶ 3.21. Thornton challenges the adequacy of such notice because it did not advise him that he was required to file additional claims of exemption after having filed an initial Claim of Exemption on September 23, 2014. Dkt. 21, p. 3. Thornton suggests he was "not on notice that such a claim of exemption could be considered to 'expire'[.]" *Id*. However, Thornton did not own the Well Piece when he filed his initial Claim of Exemption. As such, he could not claim it was subject to exemption on September 23, 2014. Nor could the initial Claim of Exemption provide the State Defendants with notice that Thornton claimed an exemption for the Well Piece two years later when the Non-Governmental Defendants attached the

Well Piece to satisfy their Amended Judgment. In addition, although Pandrea ultimately deeded the Well Piece to Thornton on October 23, 2014, the Amended Judgment was recorded four months earlier, in June, 2014. Thus, the Well Piece was not subject to exemption under Idaho Code section 55-1005 when it was sold in 2016. Because Thornton could not claim an exemption for the Well Piece, the fact Thornton did not receive notice his initial Claim of Exemption could "expire" is immaterial. Thornton had adequate notice of the Writ and the proposed sale of the Well Piece.

The opportunity to be heard requires "the right to be heard 'at a meaningful time and in a meaningful matter.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). When a procedural due process claim contests the adequacy of the opportunity to be heard, the type of hearing required varies depending on the "nature of the case," *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 313 (1950), and "the importance of the interests involved and the nature of the subsequent proceedings." *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971).

In certain cases, however, a postdeprivation remedy is adequate. This is where the *Parrett-Hudson* doctrine becomes relevant. The *Parrett-Hudson* doctrine represents "a special case of the general *Mathews v. Eldridge* analysis" in which postdeprivation remedies are all the process that is due. *Zinermon*, 494 U.S. at 128. Thornton argues the *Parrett-Hudson* doctrine is inapplicable to this case under the Supreme Court's holding and analysis in *Zinermon*. As Thornton highlights, the *Zinermon* Court noted state remedies are irrelevant in cases alleging a violation of rights specifically identified under the Bill of Rights or protected under the substantive component of the due process clause.

*Id*. at 125. Thus, a plaintiff may bring suit under § 1983 for state officials' violation of his rights to freedom of speech, freedom from unreasonable searches and seizures, or other substantive due process violations, "'regardless of the fairness of the procedures used to implement them.'" *Id*. (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

Thornton suggests his case falls under the aforementioned category of cases because the State Defendants took his property in violation of the Fourth Amendment. Dkt. 21, pp. 4-5. Although the existence of state remedies is immaterial to Thornton's Fourth Amendment claim, Thornton's reliance on *Zinermon* to suggest postdeprivation remedies are irrelevant to his due process claim is misplaced. 494 U.S. at 126.

In *Zinermon*, plaintiff mental patient ("Burch") had signed consent forms upon admission to a state mental hospital, but alleged defendants knew or should have known he was incapable of making an informed decision as to his admission. Burch claimed he was entitled to receive the procedural safeguards provided by Florida's involuntary placement procedure, and that defendants violated his due process rights by failing to initiate this procedure because he was incompetent to provide consent and thus could not qualify for "voluntary admission." *Id*. at 124. Defendants argued Burch failed to state a § 1983 claim under the *Parratt-Hudson* doctrine.

The *Zinermon* Court held *Parratt-Hudson* did not bar Burch's claim. *Id*. at 137-39. The Court determined Burch's claim was not covered by *Parrett-Hudson* because: (1) defendants could not claim the deprivation of Burch's liberty was unpredictable; (2) predeprivation process was not impossible; and (3) defendants could not characterize

their conduct as "unauthorized" in the sense the term was used in *Parrett* and *Hudson*. Thornton's case does not meet such criteria.

First, the *Zinermon* Court held defendants could not claim the deprivation of Burch's liberty was unpredictable because under Florida's statutory scheme, only a person competent to give informed consent could be admitted as a voluntary patient. However, Florida did not provide any statutory or procedural guidance for determining whether a patient, before being asked to sign voluntary admission forms, was competent. Instead, the State of Florida consciously delegated broad discretion to hospital staff members to make complex, unreviewable decisions regarding the capacity of mental health patients to give informed consent to their admission. This discretion made it predictable that staff members could, and would, cause a deprivation of liberty by erroneously admitting an incompetent patient under standards for voluntary admission. *Id*. at 136.

By contrast, Idaho's attachment statutes prohibit a sheriff from exercising discretion in executing a writ and mandate the execution procedures a sheriff must follow. *See, e.g.*, Idaho Code §§ 8-504, 8-506, 11-706. Moreover, Idaho's attachment statutes detail the procedure required for providing a judgment debtor with notice and an opportunity to be heard prior to a forced sale. Idaho Code §§ 8-502, 8-506C. The State of Idaho has not authorized sheriffs' departments to make decisions about *how* to implement procedural due process in execution of a writ. Consequently, the state could not predict the State Defendants' purported disregard of such procedures.

Second, in *Zinermon*, the Court held that the state could have provided for a mandatory predeprivation hearing on competence to lessen the likelihood of the type of deprivation that occurred. *Zinermon*, 494 U.S. at 137. Florida already had an established procedure for involuntary placement and could have established a similar procedure for evaluating competence, rather than leaving the latter to defendants' discretion. *Id*. In this case, the State Defendants allegedly violated aspects of a procedural scheme that, *inter alia*, mandated notice, service of a right to claim exemptions, a hearing upon motion by the judgment debtor to prevent erroneous property deprivations, and a defendant's right to vacate a writ before or after a sale by filing a written undertaking executed by two or more sureties in an amount sufficient to satisfy plaintiff's claims. While the statutory scheme in Florida did not allow for predeprivation due process before "voluntary" admission into a mental facility, Idaho's statutory scheme for attaching and selling a judgment debtor's property mandates predeprivation notice and an opportunity to be heard. That the State Defendants allegedly failed to follow such process distinguishes this case from *Zinermon*,

Finally, unlike the conduct at issue in *Zinermon*, which was authorized under state statute, the State Defendants' purported actions contravened established state policy codified in Idaho's attachment statutes, and therefore was "random and unauthorized" under the *Parratt-Hudson* doctrine. As the *Zinermon* Court held:

> Burch's suit is neither an action challenging the facial adequacy of a State's statutory procedures, nor an action based only on state officials' random and unauthorized violation of state laws. Burch is not simply attempting to blame the State for misconduct by its employees. He seeks to hold state officials accountable

for their abuse of their broadly delated, uncircumscribed power to effect the deprivation at issue.

*Zinermon*, 494 U.S. at 136.

Thornton's suit does not challenge the facial adequacy of Idaho's statutory procedures. Nor does Thornton allege that despite a constitutionally valid scheme, the state somehow authorized the State Defendants' conduct. Thornton's claim is instead based on the State Defendants' random and unauthorized violation of state law and is controlled by the *Parratt-Hudson* doctrine. Thus, even if Thornton had been deprived of a right to a predeprivation hearing, under *Parratt-Hudson*, the availability of an adequate postdeprivation remedy satisfies due process. Here, an adequate postdeprivation remedy was available.

First, Thornton does not suggest that his remedies under state law were inadequate. Thornton could and did file a Motion to Set Aside the sale before the State Court. Although the State Court denied the Motion on jurisdictional grounds because an appeal was pending, the Supreme Court issued its Decision on the appeal the very next day, and Thornton could have renewed his Motion at that time. Second, Idaho Code section 11-402 allows a judgment debtor to redeem property from the purchaser within six months after a sale by paying the purchaser the amount of his purchase with interest.[8] The Barratts' purchased the Well Piece for a credit bid of $5,000 at the Sheriff's sale. Dkt. 2, ¶ 3.32. Although Thornton suggests his constitutional rights were violated

---

[8] A judgment debtor may redeem the property within six months after the sale where, as here, the property sold is twenty acres or less. Idaho Code § 11-402.

because the State Defendants refused to accept his tender of $17,779.74 prior to the sale, he fails to explain why, or even acknowledge, that he did not attempt to redeem the Well Piece after the sale had taken place for a fraction of that amount. Though he failed to take advantage of it, Thornton had an adequate postdeprivation remedy. Thornton fails to state a claim under § 1983 for violation of his due process rights. *Parratt*, 451 U.S. at 543.

### b. Fourth Amendment

The Fourth Amendment's prohibition against unreasonable searches and seizures applies to the states—and to municipalities and municipal subdivisions acting under color of state law—through the Fourteenth Amendment. *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61 (1992). The Fourth Amendment's protections extend to both civil and criminal proceedings. *Id*. at 66-67. A property seizure "occurs when there is some meaningful interference with an individual's possessory interests in [his] property." *Id*. at 61 (internal quotations omitted). When assessing whether a Fourth Amendment violation has occurred, "the ultimate touchstone of the inquiry is reasonableness." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Although the Fourth Amendment's protection against unreasonable search and seizure applies in the civil context, the standards of reasonableness are less stringent than in the criminal context. *Tift v. Snohomish Cty.*, 764 F.Supp.2d 1247, 1252 (2011); *Owens v. Swan*, 962 F.Supp. 1436, 1440 (D. Utah 1997).

As Thornton suggests, postdeprivation remedies are not relevant to his Fourth Amendment claim. However, Thornton's Fourth Amendment claim is neither alleged in his Amended Complaint nor developed in his Response to the State Defendants' Motion to Dismiss. Thornton instead merely suggests the State Defendants "clearly violated the

Fourth Amendment by ignoring the constitutional protections provided in the statute, first by ignoring Plaintiff's claim that the Well Piece was subject to his homestead exemption, and second by refusing to permit Plaintiff to avoid attachment of his real property by paying the amount due on the writ." Dkt. 21, pp. 4-5.

Even if Thornton had properly alleged or argued a Fourth Amendment claim, an erroneous seizure of property does not in itself establish a Fourth Amendment violation. *See*, *Coonts v. Potts*, 316 F.3d 745, 750-51 (8th Cir. 2003) (concluding that conducting a levy under a "facially-valid writ of execution" was a reasonable seizure under the Fourth Amendment despite challenges to the writ's lawfulness); *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 536-37 (8th Cir. 1999) (a deputy's erroneous seizure of a boat and trailer while acting pursuant to a writ of execution did not support a viable Fourth Amendment claim); *Tift v. Snohomish Cty.*, 764 F.Supp.2d 1247, 1252 (W.D. Wash. 2011) (manner of execution of a writ was reasonable because deputies were lawfully present in plaintiff's home pursuant to the writ and valid state law); *Messerschmidt v. Millender*, 565 U.S. 535, 547-552 (2012) (concluding officers' reliance on a facially valid warrant was not unreasonable and entitled them to qualified immunity despite claim that they lacked probable cause for search).

Here, even if Thornton could have claimed an exemption in the Well Piece—which he could not under Idaho law—the State Defendants' actions in reliance on the Writ of Execution did not violate Thornton's Fourth Amendment rights. As noted, the Bonner County State Court issued the Writ on February 26, 2016. The Writ specified a

judgment amount and described the real property subject to levy. Nothing about the content of the Writ suggests invalidity, nor does Thornton suggest the Writ was invalid.

The Writ of Execution was provided to the Bonner County Sheriff to execute against the Well Piece on March 10, 2016. Idaho law mandates that a sheriff shall "without delay serve upon the defendant a copy of the writ of attachment." Idaho Code § 8-506B. Although Idaho Code section 11-703 requires the Sheriff to serve certain documents, including notice of exemptions available under state law and instructions to debtors for asserting a claim of exemption, Idaho Code section 11-706 outlines that such documents must be provided to the Sheriff by the judgment creditor. The State Defendants did not act unreasonably by serving documents provided by the Non-Governmental Defendants, even if such documents failed to notify Thornton of the need to file a new exemption for the Well Piece. Under Idaho Code section 11-706, the "sheriff shall not be required to investigate or assure the accuracy and completeness of the addresses of the parties to be served *or any other information* provided by the judgment creditor." Idaho Code § 11-706 (emphasis added). Accordingly, the State Defendants began the process of executing the Writ and served Thornton on April 2, 2016.

Thornton did not file a homestead exemption after being served with the Writ on April 2, 2016.[9] Under Idaho Code section 11-203, if a party claims an exemption, "[t]he

---

[9] As mentioned, Thornton's claim that the State Defendants had notice of his homestead exemption because he had previously filed a Claim of Exemption two years earlier is a non-starter; Thornton did not own the Well Piece at that time and couldn't claim an exemption for it.

claim of exemption . . . shall be delivered or mailed to the sheriff within fourteen (14) days after the date the sheriff hand delivers or mails the documents required to be served upon the defendant[.]" *Id*. Therefore, Thornton had until April 16, 2016, to properly claim an exemption. Had he done so, the Sheriff would have been required to provide notice to the Barretts within one business day. Idaho Code § 11-203(a). Thereafter, the Barretts would have had five business days to file a motion with the court stating the grounds upon which they contested a claim of exemption. Idaho Code § 11-203(b). A hearing would then have been set within five to twelve business days after the Barretts' motion, at which point the State Court could have heard and decided the contested claim of exemption. Because Thornton failed to timely submit his claim of exemption, the Sheriff was statutorily prohibited from postponing or refusing the sale of the Well Piece. Idaho Code § 11-203(c). Failing to carry out the Writ's command would have violated the State Defendants' statutory duty to execute, and Thornton fails to show their actions in light of this duty were unreasonable.

Thornton also claims the State Defendants, "in obedience to instructions of the Barretts . . . refused [his] tender and proceeded with the sheriff's sale." Dkt. 2, ¶ 3.32. However, Idaho law requires a judgment debtor to tender payment with the Court to retain or require the return of attached property. Idaho Code § 8-506C.[10] Thornton does

---

[10] Idaho Code section 8-506C provides, in part:

> A defendant may retain or require the return of all or any portion of the property upon filing with

not allege his "tender of the full amount listed on the writ of execution" was filed with the Court, or that he followed any of the steps required under Idaho Code section 8-506C to retain the Well Piece by paying the amount specified in the Writ prior to the Sheriff's sale. Dkt. 2, ¶ 3.31. As such, Thornton does not show the State Defendants' refusal of tender was unreasonable.

Under the circumstances of this case and Idaho law, Thornton cannot establish the State Defendants' actions in executing the Writ were unreasonable. Thornton thus fails to state a cognizable Fourth Amendment violation.

### c. *Monell* Liability

Municipalities may be liable under § 1983 when "action pursuant to official municipal policy of some nature causes an unconstitutional tort." *Monell v. Dep't or Soc. Servs.*, 436 U.S. 658, 691 (1978). Thornton suggests the State Defendants are liable under *Monell* because Bonner County Sheriff's Department failed to properly train and supervise its deputies regarding the constitutional execution of writs. Dkt. 21, pp. 8-11.

---

the court a written undertaking executed by two (2) or more sufficient sureties, to the effect that they are bound in an amount sufficient to satisfy the plaintiff's claims, besides costs, or in an amount equal to the value of the specific property sought to be retained or returned which has been or is about to be attached. At the time of filing such undertaking, the defendant shall serve upon the plaintiff or his attorney a notice of filing such undertaking, to which a copy of such undertaking shall be attached; and shall cause proof of service thereof to be filed with the court.

If such undertaking is in an amount sufficient to satisfy the plaintiff's claims, besides costs, proceedings thereunder shall terminate, unless exception is taken to such sureties. If, at the time of filing of such undertaking in an amount sufficient to satisfy the plaintiff's claims, plus costs, the property shall be in the custody of the sheriff, such property, together with all proceeds of the sales thereof, shall be returned to the defendant five (5) days after service of the notice of filing such undertaking upon plaintiff or his attorney, unless exception is taken to such sureties.

An underlying constitutional violation is a necessary element of a *Monell* claim. *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). Because Thornton fails to establish a constitutional violation, the Court need not address his failure to train/supervise theory. *Oceanside Organics v. Cty. of San Diego*, 341 F.Supp. 3d 1129, 1145 (S.D. Cal. 2018).

## IV. ATTORNEY FEES AND COSTS

The Barretts and the State Defendants request attorney fees and costs against Thornton and his attorney wife pursuant to 28 U.S.C. § 1927 and Idaho Code section 12-121.[11]

Under 28 U.S.C. § 1927, "[a]ny attorney… who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id*. Because the section authorizes sanctions only for the multiplication of proceedings, "it applies only to unnecessary filings and tactics once a lawsuit has begun." *In re Keegan Mgmt. Co., Securities Litigation*, 78 F.3d 431, 435 (9th Cir. 1996). The Ninth Circuit has expressly held § 1927 cannot be applied to an initial pleading. *Id*.; *see also Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir. 1986) ("Section 1927 does not

---

[11] The State Defendants also seek fees pursuant to Idaho Code section 6-610. This provision precludes a party from filing state law claims against a law enforcement officer unless plaintiff also files a written undertaking and requisite bonds. Idaho Code § 6-610. However, Thornton does not allege any state law claims, and there is no bond requirement under § 1983. *Urrizaga v. Twin Falls Cty*., 106 Fed.Appx. 546, 549 n. 2 (9th Cir. 2004); *see also Hyde v. Fisher*, 152 P.3d 653, 658 (Idaho Ct. App. 2007) (holding the security requirement of section 6-610 is preempted by federal law).

apply to initial pleadings, since it addresses only the multiplication of proceedings. It is only possible to multiply or prolong proceedings after the complaint is filed.").

Although Thornton may have unreasonably multiplied the proceedings in the state court action and in attempting to remove the state court action to this Court, the instant suit is independent from the aforementioned proceedings and is the only time Thornton has raised a § 1983 claim. Thornton has not filed anything in *this* suit other than his initial pleading and responses to the Defendants' Motions to Dismiss. Thus, the Court cannot find Thornton has unreasonably multiplied the proceedings pursuant to 28 U.S.C. § 1927 in this case.

Idaho Code section 12-121 provides: "In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." *Id*. "Fees under Idaho Code § 12-121 are not awarded to a prevailing party as a matter of right but, rather, are subject to the district court's discretion." *Garner v. Povey*, 259 P.3d 608, 613 (Idaho 2011).

A district court should only award fees "when it is left with the abiding belief that the action was pursued, defended, or brought frivolously, unreasonably, or without foundation." *C & G, Inc. v. Rule*, 25 P.3d 76, 82 (Idaho 2001) (internal quotation marks omitted). However, "when a party pursues an action which contains fairly debatable issues, the action is not considered to be frivolous and without foundation." *Id*. "A misperception of the law, or of one's interest under the law is not, by itself, unreasonable. Rather, the question is whether the position adopted was not only incorrect, but so plainly

fallacious that it could be deemed frivolous, unreasonable, or without foundation." *Snipes v. Schalo*, 950 P.2d 262, 265 (Idaho Ct. App.1997) (internal citation and quotation marks omitted).

The Court finds the instant suit frivolous, unreasonable, and without foundation. The sole basis for Thornton's suit, against all of the Defendants, is his claim "the Barretts are creditors who made use of the assistance from the Bonner County Sheriff's Department to take the plaintiff's property on the ex parte application of the Barretts" "(1) in spite of his claim of exemption as to his homestead and (2) in spite of his offer of tender of the full amount due under the writ." Dkt. 20, p. 7; Dkt. 21, p. 3. However, as detailed herein, the Well Piece was not attached or sold ex parte. Thornton had notice of the Writ, and also had, but failed to utilize, multiple statutory options to challenge the Writ and redeem the Well Piece both before and after the Sheriff's sale. Nor was the Well Piece subject to a homestead exemption, either when Thornton filed his initial Claim of Exemption in 2014, or when the Well Piece was attached and sold in 2016. Thornton's exemption claim is meritless. Finally, Thornton did not take the steps necessary to "tender payment" and vacate the sale under Idaho Code section 8-506C. Thornton's allegation that the defendants unlawfully refused tender is immaterial in light of his own failure to properly tender payment with the Court. In sum, Thornton does not suggest any cognizable legal theory to support a purported constitutional violation and instead offers arguments without any legal or factual support. The Court therefore awards the Barretts and State Defendants fees and costs pursuant to Idaho Code section 12-121.

The Barretts and the State Defendants shall file a short motion and memorandum, not to exceed 8 pages each, and supporting documents explaining the amount of fees requested and how such fees were incurred in obtaining dismissal of this case. The Barretts and State Defendants shall file their motions and any relevant documents within 30 days of the date of this order. Within 14 days of the parties' motions, Thornton may file a response brief to each motion not to exceed 8 pages, or a combined response brief to both motions not to exceed 16 pages. The Court will then make a final determination.

## V.     ORDER

**IT IS ORDERED:**

1. The Barretts' Motion to Dismiss (Dkt. 7) is **GRANTED** without leave to amend and with prejudice;

2. The Attorney Defendants' Motion to Dismiss (Dkt. 13) is **GRANTED** without leave to amend and with prejudice;

3. The State Defendants' Motion to Dismiss (Dkt. 17) is **GRANTED** without leave to amend and with prejudice[12];

---

[12] Thornton has not filed a Motion to Amend. However, the Court determines amendment—with respect to any of the Defendants—would be futile. Under *Lugar*, Thornton cannot state a § 1983 claim against the Non-Governmental Defendants. Given the circumstances of this case, Thornton cannot establish the State Defendants caused any constitutional violation, and thus cannot state a claim under § 1983. The Court accordingly dismisses Thornton's claims with prejudice and without leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (dismissal without leave to amend is appropriate where a complaint cannot be saved by amendment); *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004) (district court's dismissal with prejudice and without leave to amend was appropriate in response to a 12(b)(6) motion where the complaint could not "be saved by any amendment.")

4. Pursuant to Idaho Code section 12-101, the Barretts and the State Defendants are entitled to an award of attorney fees and costs. Defendants have 30 days to submit a motion for costs and attorney fees as outlined in Section IV of this Memorandum Decision and Order.

DATED: March 27, 2019

David C. Nye
Chief U.S. District Court Judge